UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:17-CR-0095 RWS/PLC |
| ) | |
| ROY WILLIAM BURRIS, JR., ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the Court on the Government's Motion for Inquiry into Potential for Conflict of Interest [Doc. 61]. The motion raises concerns about a potential conflict in attorney Beau Brindley's representation of Defendant Roy Burris. The Court held a hearing and the Government and Defendant appeared and argued their respective positions. In addition, Mr. Brindley provided information about his relationship with Defendant, as well as Michael Grady, who was, at the time of the hearing, Defendant's co-defendant.[1]

## Background

The Government charged Defendant with a violation of 21 U.S.C. § 841(a)(1) (conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine). In the initial indictment, Defendant had two co-defendants, Oscar Dillon and Michael Grady. Defendants Grady and Dillon are also co-defendants, along with a number of other individuals, including Derrick Terry, in a different criminal case pending in the Eastern District of Missouri, United States v. Velasquez, No. 4:15CR00404.

In the Velasquez matter, Mr. Brindley entered his appearance on behalf of Mr. Terry. The Government sought an inquiry into a potential conflict posed by Mr. Brindley's representation of

---

[1] On June 12, 2017, the Government dismissed its indictment against Michael Grady.

Mr. Terry as a result of an alleged prior business relationship between Mr. Terry's co-defendant Mr. Grady and Mr. Brindley. The court held a hearing and concluded that because "Grady may have been involved in Terry's decision to retain Brindley, the court finds that there is a serious potential for conflict in this matter that requires substitution of counsel for Brindley on behalf of Defendant Derrick Terry." In a subsequent related order, the court found that "Brindley has had a professional relationship with Grady for a number of years," and Mr. Grady, "who represents that he is a paralegal, has referred clients to Brindley and they have worked together on those cases with Grady performing investigative services." The court concluded that "there is a significant risk that Brindley's long-term pecuniary interests lie with Grady, with whom he has a long-standing, continuing professional relationship." Finally, the court determined that "a waiver would not adequately protect Defendant's interests, the 'integrity of the judicial proceeding,' and 'public confidence in the legal profession'…." In Velasquez, Mr. Terry declined to execute a waiver of conflict.

## Discussion

The Government asserts that the concerns identified in Velasquez with respect to the prior financial relationship between Mr. Grady and Mr. Brindley are present in this case and that the "Court should exercise its discretion to refuse a waiver of conflict, should Defendant Burris waive any conflict in this matter." To support its position, the Government relies on the Court's determination in the Velasquez matter as well as jail recordings of Mr. Burris that were created while Defendant was incarcerated in California.

Defense counsel asserts that the conflict at issue in this case is different than in Velasquez because the Government has dismissed Mr. Grady from this case and therefore the conflict is "speculative and theoretical." Moreover, counsel argues that Defendant has been advised of the conflict and has waived the conflict in writing.

2

### The jail tape recordings

In November 2016, Defendant, a female acquaintance and Mr. Grady were recorded on a three-way conversation referencing Mr. Brindley. In December 2016, Defendant stated in a recorded conversation that he "got in contact with Beau was (sic) through Grady." Other December conversations between Defendant and the female acquaintance suggest that Defendant provided Mr. Grady money to pay Mr. Brindley. Yet another conversation, between Defendant and his mother, substantiates that Mr. Grady was supposed to pay Mr. Brindley money on Defendant's behalf.

### Mr. Brindley's statements

Mr. Brindley acknowledged at the hearing that he has a relationship with Defendant Grady. He described his relationship as follows: "…basically amounted to Mr. Grady referring a handful of cases, four to five cases. I would estimate…." Mr. Brindley stated that Mr. Grady never worked for him and Mr. Brindley never paid Mr. Grady. However, Mr. Grady worked for some of Mr. Brindley's clients, including, Mr. Terry, the Velasquez defendant.

With respect to Defendant, Mr. Brindley stated that "Mr. Burris retained me to represent him here in the Eastern District of Missouri without any involvement of Mr. Grady." At the time Defendant retained Mr. Brindley for this case, Mr. Brindley "had been representing Mr. Burris for a significant period of time on multiple issues." Mr. Brindley has not denied that Mr. Grady connected Defendant and Mr. Brindley: "No one has ever stated that Mr. Grady did not recommend the undersigned to Defendant at some point."

### Existence of a conflict

The Sixth Amendment guarantees criminal defendants the right to conflict-free representation. Wood v. Georgia, 450 U.S. 261, 271 (1981). "A conflict exists when counsel places himself in a position conducive to divided loyalties." United States v. Carpenter, 769 F.2d 258, 263 (5th Cir. 1985). "An actual conflict occurs 'when, during the course of

representation, the attorney's and the defendant's interest diverge with respect to a material factual or legal issue or to a course of action.'" United States v. Edelmann, 458 F.3d 791, 807 (8th Cir. 2006) (citation omitted).

In Edelmann, the Eighth Circuit articulated a court's responsibilities with respect to conflict matters, stating that "[w]henever the court's inquiry reveals that a criminal defendant's attorney in fact suffers from an actual or potential conflict, the court has a subsequent 'disqualification/waiver' obligation." Id. (internal quotation marks and citation omitted). "If the court discovers that the attorney suffers from a severe conflict - - such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation - - the court is obligated to disqualify the attorney." Id. (internal quotation marks and citation omitted). With respect to a potential conflict "- - such that a rational defendant would knowingly and intelligently desire the conflicted lawyer's representation - - the court should obtain from the defendant a valid waiver of his right to a non-conflicted lawyer." Id. (internal quotation marks and citation omitted). As the Eighth Circuit has stated, "[b]ecause a defendant may waive his right to counsel, the defendant may also waive his right to a counsel free from serious conflicts of interest." Id.

The Court concludes that Mr. Brindley has a potential conflict of interest because of his financial relationship with Defendant's former co-defendant Mr. Grady. First, the Court adopts the conclusion that the court reached in the Velazquez matter with respect to the existence of a potential conflict. Second, both the jail recordings and Mr. Brindley's own acknowledgements establish that Mr. Grady has a prior financial relationship with Mr. Brindley, has steered clients to Mr. Brindley, including Defendant, and has worked as an investigator for Mr. Brindley's clients.

Defense counsel argues that any conflict is "speculative and theoretical," particularly because the Government has dismissed Mr. Grady. The Court disagrees with counsel's

4

characterization of the conflict and the implication that a "non-actual" conflict is of minimal or no significance. While the record does not support a finding that an actual conflict currently exists, the record certainly establishes that a potential conflict exists. Under Edelmann, the existence of a potential conflict is enough to trigger an assessment of whether the Defendant may, and, does knowingly and voluntarily, waive the Defendant's right to a conflict-free attorney. Id.

It should be noted that here the potential conflict at issue is one of attorney self-interest. That is, as the Government has asserted, the conflict arises because Mr. Brindley's pecuniary interest in Mr. Grady has the potential to impair counsel's ability to represent Defendant. As the Fifth Circuit has held:

> The reason for distinguishing multiple representation conflicts from those involving self-interest is clear. When multiple representation exists, the source and consequences of the ethical problem are straightforward: "counsel represents two clients with competing interests and is torn between two duties. Counsel can properly turn in no direction. He must fail one or do nothing and fail both." [citation omitted]… Conflicts between a lawyer's self-interest and his duty of loyalty to the client, however, fall along a wide spectrum of ethical sensitivity from merely potential danger to outright criminal misdeeds. Sources of potential conflict, from among the manifold variations possible, include: matters involving payment of fees and security for fees; doing business with a client….

Beets v. Scott, 65 F.3d 1258, 1270 (5th Cir. 1995) (en banc) (alterations added).

The Eighth Circuit has similarly recognized a distinction between conflicts generated by joint representation and attorney self-interest. See Caban v. United States, 281 F.3d 778, 782-83, 784-85 (8th Cir. 2002). However, "[w]hen given notice of a conflict of interest, the trial court is obliged to conduct an inquiry regardless of the nature of the conflict." Id. at 783.

### Is the potential conflict waivable?

The Court provided both the Government and defense counsel with an opportunity to present post-hearing argument on the issue of whether the potential conflict between Mr. Brindley's self-interest and Defendant's interests was waivable. In its post-hearing

5

memorandum, the Government reiterated its view that the court's finding in Velazquez and the jail recordings demonstrated the existence of a "pre-existing relationship between counsel Brindley and Grady." The Government further stated that "Burris' and Grady's interests potentially remain adverse, and Counsel Brindley has a long standing financial relationship with Grady, that extends into this very case." However, except for a brief comment that Wheat v. United States, 486 U.S. 153 (1988) and United States v. Sotelo, 97 F.3d 782 (5th Cir. 1996) "stand for the proposition that the Court has substantial latitude in refusing to accept a waiver in the face of a potential conflict," the Government has not provided any support for the proposition that a potential conflict under the circumstances present here is not waivable.[2]

By contrast, defense counsel has strongly asserted that Defendant has the right to waive a conflict generated by an attorney's pecuniary interest. Defense counsel cites numerous cases in which defendants waived potential conflicts related to attorney self-interest. None of them are from the Eighth Circuit. However, in United States v. Noe, 601 F.3d 784 (8th Cir. 2010), the Eighth Circuit considered a fact pattern that involved one defendant's family funding payment to the attorney of a co-defendant. The defendant in Noe also submitted evidence that his co-defendant's mother was involved in a sexual relationship with the defendant's attorney. Id. at 788. In the context of the defendant's post-trial habeas petition alleging that his attorney was ineffective, the Eighth Circuit concluded as follows:

> Even if there was a conflict of interest, Noe made a knowing, voluntary, and intelligent waiver of his right to conflict-free assistance of counsel. See United States v. Brekke, 152 F.3d 1042, 1045-46 (8th Cir. 1998). Noe affirmatively waived his conflict of interest claim by signing a written waiver and verbally assuring the trial court during an on-the-record inquiry that he had considered the possible conflict of interest that could arise from the funding by another individual of the cost of his legal representation. The written waiver stated that there had been "a full disclosure of the potential conflict" between Noe and Schultz. During the court's inquiry, Noe acknowledged his right to independent counsel and averred that he was

---

[2] In fact, the Government explicitly stated that it "defers to the court's assessment of the waivability of any conflict in this matter…."

6

>   comfortable with his relationship with his counsel. Noe was aware of the potential conflict of interest and decided to waive any such conflict. See United States v. Edelmann, 458 F.3d 791, 807 (8th Cir. 2006) (explaining that for a waiver to be valid the defendant must be apprized of the conflict, cognizant of the potential consequences of continuing with counsel, and aware of his right to obtain other counsel)."

Id. at 791-92.

At the hearing, the Court discussed with Defendant the potential conflict posed by Mr. Brindley's prior financial relationship with Mr. Grady. The Court advised Defendant that another court had determined Mr. Grady and Mr. Brindley "have a financial relationship from the past." Defendant acknowledged that he understood that "they've done business in the past based on what they have had going on, so I am sure." Furthermore, the Court advised Defendant of the impact a waiver of a conflict might have on his case.[3]

Having considered the record in this case and the guidance from courts considering waivers of potential conflicts arising from attorney self-interest, the Court concludes that the potential conflict here is waivable. Even where there may be a serious conflict of interest, the Eighth Circuit has concluded that a defendant may waive "the right to counsel free from serious conflicts of interest." Edelmann, 458 F.3d at 807. Moreover, because the Government dismissed Mr. Grady, the potential for a serious conflict is somewhat diminished. See in contrast, United States v. Laureano-Perez, 797 F.3d 45, 56-57 (1st Cir. 2015). As in Edelmann, the Court will afford Defendant an opportunity to waive the conflict.

Accordingly,

---

[3] Defendant signed a waiver of conflict following the Court's inquiry. However, the Court advised that it would not accept the waiver until the Court determined whether the potential conflict was waivable as a matter of law.

**IT IS HEREBY ORDERED** that this matter is set for **July 12, 2017 at 9:30 a.m**. to take up the matter of Defendant's waiver of conflict of interest.

                                                                                                           _____
                                                                                                           PATRICIA L. COHEN
                                                                                                           UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of July, 2017