UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 17 CR 95-3 |
| vs. ) | |
| ) | Hon. Rodney W. Sippel |
| OSCAR DILLON, et. al. ) | |

**DEFENDANT BURRIS'S MOTION IN LIMINE**
**TO EXCLUDE OTHER ACT EVIDENCE**

Comes now the Defendant, ROY W. BURRIS, by and through his attorney, Beau B. Brindley, and respectfully moves this Court to exclude other act evidence pursuant to FRE 404. In support, he states as follows:

**INTRODUCTION**

The Government's trial brief details a whole swath of allegations that have absolutely nothing to do with the charges in this case. The conspiracy actually charged in this case is between Mr. Burris and Mr. Dillon. R1. There is no evidence that the cocaine found at the 22001 S Hawaiian Gardens Avenue apartment in California has any connection to the charged conspiracy. Similarly, the gun and documentation confiscated at the Long Beach Airport have nothing to do with this case. Mr. Burris moves to exclude any allegations outside the scope of the charged conspiracy. Aside from exponentially lengthening what should be a rather simple and succinct trial, these allegations are irrelevant character evidence under Rule 404(b) and substantially more prejudicial than probative. FED. R. EVID. 404(b), 403.

**FACTS**

Mr. Burris is charged with conspiring to distribute cocaine to Mr. Dillion between August and September 2016. R.1. The allegations underlying the charged conspiracy are rather simple: the government alleges that Mr. Burris operated as a middleman arranging the shipment of five

1

kilograms of cocaine from Mr. Roque to Mr. Dillion. The cocaine was shipped through the USPS on September 7, 2016. R1.

On February 29, 2016, Mr. Burris was detained at the Long Beach Airport. Following a search of his luggage, law enforcement discovered a .45 caliber semi-automatic pistol bearing serial number #XD654585, some documents, and several cell phones. That case is charged in Central District of California, case no. 16 CR 819 ("California case"). Mr. Burris filed a lengthy suppression motion concerning those objects. R. 227. The following facts are taken from the hearing on the motion to suppress.

At approximately 4:00 on February 29, 2016, Taijia Payton, a Transportation Security Officer (TSO) at the Long Beach Airport was operating the x-ray machine at a TSA checkpoint. She observed what appeared to be a handgun in one of the bags as it was passing through the x-ray machine. Tr. 3-12. Pursuant to TSA policy, TSO Payton called for a supervisor, Michael Banta. Tr. 13. Mr. Banta in turn called LBPD Officer Jason Dallas. Tr. 15.

Officer Dallas was assigned to the Long Beach Airport. Tr. 18. Officer Dallas retrieves a grey duffle bag from the x-ray machine. Tr. 21. Mr. Burris approached Officer Dallas and identified the bag as belonging to him. Tr. 21. Officer Dallas searched the bag and located and seized the gun. Tr. 21. Officer Dallas informed Mr. Burris that he was under arrest for attempting to bring a gun through an airport security checkpoint. Tr. 22.

Officer Dallas then questioned Mr. Burris. Officer Dallas testified that Mr. Burris told him that he works in security. Tr. 23. During this interaction, Officer Dallas was provided information indicating that Mr. Burris was on probation for money laundering, though Mr. Burris corrected him, indicating that he was on probation for a marijuana offense. Tr. 23-24. Officer Dallas did not immediately Mirandize Mr. Burris. After his conversation with Mr. Burris in the

2

airport, Officer Dallas took Mr. Burris to his squad car. At that point, another officer read Mr. Burris his *Miranda* rights. Tr. 23; *see, also,* Tr. 54 (testimony of Officer Garey Bruyere). At that time, Mr. Burris was taken to the Long Beach Police Department and released two hours later. Tr. 23.

Officer Dallas testified that, once at the Long Beach Police Department, he and other officers "[started] to inventory what was evidence and what was prisoner's property." Tr. 24. Officer Dallas identified several "items of interest" in Mr. Burris's luggage or on his person. First, LBPD officers found $2,420 rolled in a rubber band found in the gray bag and $400 taken from Mr. Burris's person. Second, Officer Dallas identified "miscellaneous papers with numbers and notes on them," which he described as "different notes and like payments and money owed, like he was keeping track or a tally of something." Tr. 29-30. Third, Officer Dallas found several gift cards. Tr. 34. Fourth, Officer Dallas also discovered an expired state ID belonging to a deceased individual. Tr. 31. Officer Dallas found four flip phones and two iPhones taken from Mr. Burris's bag and one iPhone taken from Mr. Burris's person. Tr. 28. Officer Dallas indicated that he had no way of determining which of the iPhones was taken from Mr. Burris's person and which were taken from his luggage. Tr. 39; *See, also*, Tr. 132 (testimony of Agent Masterton). Regarding the iPhone taken from Mr. Burris's person Officer Dallas further agreed that he "didn't identify anything suspicious," about the that particular iPhone. Tr. 39-40. (Q. you "didn't identify anything suspicious, I should say, about that particular phone at all, did you? A No."). According to Officer Dallas, Mr. Burris indicated that he had the cell phones to communicate with different women he was dating. Tr. 33.

Officer Dallas testified that he had some suspicion that Mr. Burris was involved in some type of illegal activity but he did not know what form that activity might take. Tr. 36 ("I didn't

know exactly what I had but I knew that it's not normal for somebody to be walking around with seven cell phones. So some -- some type of criminal activity … consistent with what I also found inside of his backpack as far as the receipts."). Officer Dallas admitted that he did not believe that the defendant was engaged in any type of drug trafficking. Tr. 45 ("Okay. So as you looked in the backpack and you were looking at the notes, you couldn't say that this man had been involved in any kind of drug crime with any sort of confidence at all, could you? A Yes. Q You what? A Yes, you're right."). The case was originally referred to the financial crimes unit of the Long Beach Police Department. Tr. 66. Mr. Burris was released on the same day several hours later.

  The next action taken on the case appears to have occurred two business days later when LBPD officers contacted Agent Masterton of with the Department of Homeland Security ("DHS"). Tr. 66. At that point Agent Masterton received documents describing some of the objects taken from Mr. Burris's luggage. Tr. 69. On March 21 Mr. Burris's former counsel requested returns of his passport. Tr. 95. On March 22 Agent Masterton was first able to personally inspect the papers taken from Mr. Burris's luggage. Tr. 104; *See also,* Tr. 133-4.

  The documents which the government characterizes as drug ledgers are in fact a collection of miscellaneous notes containing, in addition to the notes described by the government in their trial brief, various names including "Mom," "Crystal" (Mr. Burris's then girlfriend), "Christmas money," and "2016 bills." Tr. 43. The notes do not mention Edgar Roque Oscar Dillon, or any nickname known to refer to either of these men.  Further, these notes have know identifiable connection to the single transaction charged in the indictment in this case.

  Law enforcement obtained a search warrant for a California address at 22001 S. Hawaiian Gardens. In executing that warrant, law enforcement discovered five kilograms of

4

cocaine. The facts that the government's trial brief leaves out is that said cocaine was discovered in a house in which Mr. Burris did not reside, and for which Mr. Burris did not have a key. Furthermore, these five kilograms were discovered in a locked bedroom belonging to another person. Officers did not find a key to that room in Mr. Burris's possession. There is no evidence that Mr. Burris had access to that room. Nor is there any evidence that Mr. Burris had any actual connection to the cocaine located in that room.  Despite being under surveillance, Mr. Burris was never seen entering that residence with any item that could contain that cocaine on or about the time of its discovery. Mr. Burris has not been charged in the Central District of California, and based on conversations with the AUSAs handling that case, the undersigned does not expect him to be. There is no discernible connection between that cocaine and the charged conspiracy between Oscar Dillon and Roy Burris, which involved the transportation of a package containing cocaine through the mail.

**ARGUMENT**

Aside from the legal issues discussed below, one difficulty with the government's attempt to introduce evidence from the Chicago (the Hawaiian Gardens warrant resulted from a Chicago-based wiretap investigation) and California investigations is that this evidence would effectively consume what should be a relatively simple trial. The government cannot prove that the drugs taken from the California address were ever possessed by or accessed by Mr. Burris. Any attempt to do so would itself bring in separate and ambiguous issues that would take far more time to litigate than the question of whether Mr. Burris arranged for or provided the narcotics charged in this case. Similarly, the gun and other items taken from Mr. Burris cannot be specifically connected to the charges in this case. The law enforcement officers who detained Mr. Burris originally were suspicious of some type of financial offense. Admitting those items

into evidence would require calling several witnesses from California, and likely involve (as argued below) some rather tortured and somewhat legally dubious expert testimony.

I. **EVIDENCE PROFFERED BY THE GOVERNMENT IS IMPERMISSIBLE CHARACTER EVIDENCE.**

Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *United States v. Cotton*, 823 F.3d 430, 434 (8th Cir. 2016) (quotations omitted). Evidence of prior bad acts is only admissible if offered for a certain limited purpose, and "(1) is relevant to a material issue, (2) is similar in kind and close in time to the crime charged, (3) is proven by a preponderance of the evidence, and (4) does not have a prejudicial effect that substantially outweighs the probative value." *United States v. Cotton*, 823 F.3d 430, 434 (8th Cir. 2016) (citation and quotation omitted).

The government's trial brief seems to suggest that nearly any time a defendant is accused of drug dealing or drug possession, other instances of drug possession are always relevant to establish knowledge, intent or motive. That is not the law in the Eighth Circuit. "Federal Rule of Evidence 404(b)(2) identifies the purposes for which evidence of prior convictions may be admitted, but merely reciting those permissible purposes without more is not sufficient to render evidence of a prior conviction admissible in any particular case. … Rule 404(b) requires a careful inquiry and analysis *of the purpose for which the evidence is offered*. The government—as proponent of the evidence—must identify the permissible non-propensity purpose for the evidence, and must articulate the relationship between the prior conviction and a material issue in the case." *United States v. Cotton*, 823 F.3d 430, 434 (8th Cir. 2016) (emphasis added). "Evidence of a defendant's prior convictions is categorically inadmissible to prove the defendant's criminal propensity." *United States v. Cotton*, 823 F.3d 430, 433 (8th Cir. 2016)

6

In *United States v. Turner*, 781 F.3d 374, 390–91 (8th Cir. 2015) the Eighth Circuit emphasized that "Before evidence of a prior conviction is admitted, the district court should ask why the government seeks to admit it." *Id*. In that case, the government sought to admit evidence of a defendant's prior drug possession in order to prove his intent and knowledge to commit the charged conspiracy. The Court emphasized that the government must provide some explanation linking the defendant's previous acts to his knowledge or intent in the current charge. *Id*. "Only if these types of questions are asked, and adequately answered, can the district court determine whether evidence of prior bad acts, including prior convictions in drug cases, may be admitted pursuant to Rule 404(b) or whether it must be excluded because it is offered solely to prove criminal propensity or is substantially more prejudicial than probative."
*United States v. Turner*, 781 F.3d 374, 390–91 (8th Cir. 2015)

The key requirement of Rule 404 is that the explanation connecting a bad act to an element in the charged offense must be "supported by some propensity-free chain of reasoning." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc); *United States v. Rodriguez*, 880 F.3d 1151, 1167–68 (9th Cir. 2018) ("Thus, where the defendant's knowledge is contested, we have 'emphasized that the government must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act.' … 'This logical connection must be 'supported by some propensity-free chain of reasoning.'"); *United States v. Rodriguez*, 880 F.3d 1151, 1167–68 (9th Cir. 2018); *United States v. Burnett*, 827 F.3d 1108, 1118 (D.C. Cir. 2016); *United States v. Caldwell,* 760 F.3d 267, 282 (3d Cir. 2014).

The government has argued that the fact that Mr. Burris may have possessed cocaine on some other day in a different state shows that he had the knowledge, intent, and motive to

7

arrange the shipment of narcotics from Mr. Roque to Mr. Dillon. The problem with that argument is that there is no way to connect Mr. Burris's alleged knowledge of the cocaine possession in L.A. to his knowledge of the current charges, without relying on a propensity argument. In *Caldwell*, the Third Circuit articulated exactly how and why this impermissible chain of reasoning must be disallowed:

> "The reason we require the proponent and the court to articulate a logical chain of inferences connecting the evidence to a non-propensity purpose is because we must assure that the evidence is not susceptible to being used improperly by the jury. Another way to frame this requirement is to ask the prosecution to explain 'exactly how the proffered evidence should work in the mind of a juror to establish the fact the government claims to be trying to prove.' Framed this way, the flaw in the evidence proffered in this case becomes apparent.
> …
> The prosecution's fundamental task was to prove that Caldwell unlawfully possessed the gun recovered by the detectives. Caldwell's defense was that he never possessed the gun. The prosecution sought to admit evidence that, on two prior occasions, Caldwell was convicted of unlawfully possessing firearms. The question the prosecution must answer is this: "How, exactly, do Caldwell's two prior convictions for unlawful firearm possession suggest he knowingly possessed this gun on this occasion?" Hard as we try, we see only one answer to that question: If Caldwell knowingly possessed firearms in the past, he was more likely to have knowingly possessed the firearm this time. This is precisely the propensity-based inferential logic that Rule 404(b) forbids.

*United States v. Caldwell*, 760 F.3d 267, 282 (3d Cir. 2014) (citations and quotations omitted).

The Third Circuit went on to explain the type of arguments which would successfully allow for the admission of prior bad acts:

> "We can envision numerous scenarios where, with slightly different facts, a proper, non-propensity chain might be forged. For example, assume that Caldwell's knowledge was at issue because he claimed to have believed the gun in his hand was a toy. Under this hypothetical, the chain of inferences leading to the admissibility of the evidence would be as follows: Caldwell was twice previously convicted of unlawful firearm possession; he is, thus, familiar with the touch and feel of an authentic firearm; and because he knows what a real firearm feels like, it is more likely that he knew the gun in his hand on this occasion was a real

8

>firearm.
>
>...
>
>Alternatively, assume the gun was discovered inside a backpack that Caldwell was carrying, and that he defended the charge by claiming the gun was placed there without his knowledge. If the proffered evidence consisted of eyewitness testimony that Caldwell threatened another individual with a black handgun two hours before his arrest, the chain of logical inferences could be forged as follows: Caldwell possessed a black handgun earlier that evening, therefore it is less likely that a similar black handgun was unknowingly deposited in his backpack."

*United States v. Caldwell*, 760 F.3d 267, 282–83 (3d Cir. 2014).

The Eighth Circuit case law is consistent with the Third, Seventh, Ninth and D.C. Circuits. In Cotton, for example, the Eighth Circuit Explained:

>"On appeal, the government also asserts that evidence of the convictions was admissible to prove lack of mistake or accident. This argument is based on Cotton's assertion at trial that his fingerprints appeared on a plastic shopping bag wrapped around the cocaine by happenstance. However, Cotton's argument was not that he had accidentally touched the bag wrapping the cocaine, but that he had touched the bag in the ordinary course of business at his workplace before the bag was involved in the drug packaging. The government's argument that the prior convictions are relevant as to mistake or accident therefore ultimately amounts to an argument that a person with prior drug convictions must have been involved with a drug transaction when he touched the plastic bag, which is, of course, a non-permissible propensity-based use of the evidence."

*United States v. Cotton*, 823 F.3d 430, 434 n.2 (8th Cir. 2016) (finding erroneous admission of bad act evidence harmless). *See also United States v. Turner*, 781 F.3d 374, 391 (8th Cir. 2015).

Furthermore, a defendant must "meaningfully dispute" an issue in order to justify the admission of prior bad act evidence. *Miller,* 673 F.3d at 697. In this case, Mr. Burris's defense will be that he did not play any role in the transportation of narcotics from Mr. Roque to Mr. Dillon. He is not going to argue that he somehow *accidentally* acted as a middleman

Similarly, the alleged drug ledgers and gun are at best prior bad acts that could only be used to establish propensity to commit an offense. Let us assume (and as argued below that is a

9

generous assumption) that the documents taken from Mr. Burris at the airport are some sort of *drug* ledgers. Those documents do not correspond to the dates and times of the charges in this case. They do not mention Mr. Dillon or Mr. Roque. The only way in which those documents, even if they are drug ledgers, can be used to establish Mr. Burris's guilt in this case is through the argument: Mr. Burris has sold drugs and, therefore, he is more likely to have arranged the transaction in this case. That is the very definition of a propensity argument: *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013) ("The government relied solely on the California calls as evidence to support its characterization of Richards as a drug dealer. And it did not connect drug dealing in the abstract with the specific patterns in this case. For example, nothing in closing remarks suggested that drug couriers (as opposed to money couriers) use the lead-car approach or that a drug dealer would know that a pick-up conducted as occurred in this case would involve drugs, not money."); *United States v. Jones*, 389 F.3d 753, 757 (7th Cir. 2004) (vacated on other grounds by 545 U.S. 1125 (2005) ("The Assistant U.S. Attorney then repeatedly told the jury that Jones's prior convictions showed that he was a drug dealer, and that they should, therefore, find that he intended to deal drugs in this case. This looks, walks, and sounds like the argument "once a drug dealer, always a drug dealer.").

      Similarly, the gun taken from the airport is wholly irrelevant. The government's argument appears to be that people carry guns to protect themselves while involved in drug transactions. Therefore, the fact that Mr. Burris had a gun on February 29, 2016, tends to establish that he was engaged in a drug transaction or planning to engage in a drug transaction months later when no gun was known to be involved. Therefore, because he was planning to engage in a drug transaction on another day when he possessed a gun, it is more likely that he is

involved in this offense. Again, that is entirely a propensity argument, and a relatively weak one at that.

The case law cited by the government noting the acknowledged connection between drug trafficking and firearms is fair enough. But it is one thing to say that something is a tool of the trade and another to say that, because someone possesses a firearm on one occasion, they are a likely drug dealer. Nor does that caselaw stand for the proposition that a defendant's alleged attempt to take a weapon into an airport some six months before a charged drug deal is evidence that he is guilty of the charged offense.

**II.     EXTRANEOUS EVIDENCE IS MORE PREJUDICIAL THAN PROBATIVE.**

Evidence is unfairly prejudicial under Rule 404(b) and 403 if the evidence "causes a verdict to be based on an improper basis." *United States v. Fang*, 844 F.3d 775, 780 (8th Cir. 2016) (citations omitted). "Though all Rule 404(b) evidence is inherently prejudicial, the test under Rule 403 is whether its probative value is *substantially* outweighed by the danger of *unfair* prejudice." *Williams*, 796 F.3d at 960 (quoting *United States v. Cook*, 454 F.3d 938, 941 (8th Cir. 2006)). Where prior bad act evidence is of marginal or questionable utility, this Court has the discretion to exclude evidence that "would likely result in a mini-trial." *United States v. Fang*, 844 F.3d 775, 780 (8th Cir. 2016) (unpublished) (citing *United States v. Waloke*, 962 F.2d 824, 830 (8th Cir. 1992)).

The California evidence proffered by the government is the very definition of *unfairly* prejudicial. First, the government is not going to be able to establish that Mr. Burris had any direct knowledge of the narcotics seized in California. This, by itself belies the notion that they are admitting that evidence to prove Mr. Burris's motive or intent in this case. Furthermore, litigating that issue will require calling several witnesses from California, including not only law

11

enforcement officers, but civilian witnesses familiar with Mr. Burris's living situation at the time and his connection, if any, to the California address. It will take up a great deal of time and be the very definition of a mini-trial

The gun is similarly completely unconnected to the instant charges.  It is, in fact, the subject of pending charges in another jurisdiction.  It is difficult to understand what the government's argument would be. The gun was registered in Mr. Burris's name. However, the fact that someone owns a gun is not evidence that he has the intent or desire to sell drugs generally, let alone the idea that he was going to sell drugs to Mr. Dillon as charged. The gun is so far removed in time from the charged events that it cannot be anything other than unfairly prejudicial.  Moreover, its admission will result in the trying of the indicted California case as part of this one.  That is, once again, the very definition of a mini that is to be avoided.

The "drug ledgers" noted by the government are not drug ledgers. They are notes of money owed to whom and when. One can imagine the government calling an expert witness to testify to the contrary. But it is difficult to understand the basis upon which that expert would draw that conclusion. There are no "code words" in the notes for the government to identify. More to the point, even if they were drug ledgers, absent some connection to this case, they are wholly irrelevant for anything than the impermissible propensity logic noted above.

Any limited probative value this evidence could possibly have to the charges at issue in this trial would be substantially and unfairly outweighed by the inherent prejudice in admitting this unrelated evidence before the jury and creating two mini-trials in the midst of this one. All such evidence must thus be excluded.

WHEREFORE, the defendant respectfully moves that this Court exclude the other act evidence described above.

          Respectfully submitted,

          ROY BURRIS

      By:    s/ Beau B Brindley
              Counsel for defendant

LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
312.765.8878

### CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Michael A. Reilly
Assistant United States Attorney

          /s/ Beau B Brindley
          Counsel for defendant Roy Burris